1 | Steven H. Schwartz (SBN 94637)
sschwartz@sj-law.com
2 | Schwartz & Janzen, LLP
12100 Wilshire Blvd., Suite 1125
3 | Los Angeles, CA 90025-7117
Phone: (310) 979-4090
4 | Fax: (310) 207-3344

5

6 | Wayne S. Karbal  (Awaiting Admission  Pro Hac Vice)
wkarbal@karballaw.com
7 | Paul Parker  (Awaiting Admission  Pro Hac Vice)
pparker@karballaw.com
8 | Karbal, Cohen, Economou, Silk & Dunne, LLC
150 S. Wacker Drive, Suite 1700
9 | Chicago, IL  60606
Phone: (312) 431-3700
10 | Fax: (312) 431-3670

11

12 | Attorneys for Plaintiff
First State Insurance Company

13

14 | **UNITED STATES DISTRICT COURT**

15 | **CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

16

17 | FIRST STATE INSURANCE COMPANY,

18 |               Plaintiff,

19 |        vs.

20 | HILL BROTHERS CHEMICAL COMPANY,

21 |               Defendant.

22

Case No. **SACV10-01032 AG(RNBX)**

COMPLAINT FOR DECLARATORY RELIEF and REPAYMENT

23 | Plaintiff First State Insurance Company, by its attorneys, for its Complaint against Defendant

24 | Hill Brothers Chemical Company, alleges the following:

25 | <u>NATURE OF ACTION</u>

26 | 1.        This is an action for declaratory judgment pursuant to 28 U.S.C. §2201 wherein First

27 | State seeks a declaration that it does not owe any further or additional defense and/or indemnity to

28 | Defendant Hill Brothers Chemical Company under First State Policy No. 902537 and under First

1

State Policy No. 955247, and wherein Plaintiff seeks repayment, reimbursement, restitution, and/or recoupment of monies paid on behalf of Defendant Hill Brothers Chemical Company in the amount of $2,000,000.00 plus interest.

PARTIES

2.     Plaintiff First State Insurance Company ("First State") is a Connecticut corporation with its principal place of business in Massachusetts.

3.     Defendant Hill Brothers Chemical Company ("HBCC") is a California corporation with its principal place of business in California.

JURISDICTION AND VENUE

4.     Jurisdiction is proper in this Court, pursuant to 28 U.S.C. §1332(a), because First State and HBCC are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.     Venue is proper in this judicial district, pursuant to 28 U.S.C. §1391(a) (1) - (3), because HBCC resides in this judicial district and all Defendants reside in the same State, because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and/or because HBCC is subject to personal jurisdiction in this judicial district.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

6.     On information and belief, numerous asbestos-related lawsuits have been commenced against HBCC in California and in other states (the "underlying actions").

7.     On information and belief, HBCC sought coverage for the underlying actions under HBCC's primary liability insurance policies.

8.     Plaintiff First State issued an excess liability insurance policy, No. 902537, effective 7/6/75 to 8/12/76, with a limit of $2,000,000.00, which named Hill Bros., Inc., a company unrelated to HBCC, as an insured, and which did not name HBCC as an insured (hereinafter "Policy No. 902537") (copy attached and marked Exhibit A).

9.     Plaintiff First State issued an excess liability insurance policy, No. 955247, effective 4/30/84 to 5/10/85, with a limit of $24,500,000.00, which named HBCC as an insured (hereinafter "Policy No. 955247") (copy attached and marked Exhibit B).

2

10.     In or about 1997, HBCC communicated to First State that HBCC's primary liability insurance coverage and/or policies were nearing exhaustion and communicated HBCC would seek coverage from First State for certain of the underlying actions.

11.     On or about December 3, 1997, First State responded to HBCC, stating that First State Policy No. 902537 and First State Policy No. 955247 were excess policies, requesting evidence that the coverage underlying these policies was properly exhausted, and otherwise reserving First State's rights on various grounds.

12.     On or about December 17, 1997, HBCC requested a copy of First State Policy No. 902537.

13.     On or about January 15, 1998, First State forwarded a copy of First State Policy No. 902537 to HBCC.

14.     In or about 2002, HBCC communicated to First State that HBCC's primary liability insurance coverage and/or policies were exhausted and sought coverage from First State for certain of the underlying actions.

15.     On or about May 9, 2002 First State responded to HBCC, requesting evidence that the coverage underlying the First State policies was properly exhausted, reserving its rights pursuant to *Buss v. Superior Court*, 16 Cal. 4th 35, 65 Cal. Rptr. 2d 366, 939 P.2d 766 (1997), to seek reimbursement, and otherwise reserving its rights on various grounds.

16.     In or about 2002, First State began paying for the defense and indemnity of certain of the underlying actions, making such payments under Policy No. 902537 and Policy No. 955247.

17.     Thereafter, First State paid out its full policy limits under Policy No. 902537 and Policy No. 955247, and in or about June 2009, First State notified HBCC that First State had paid its full policy limits under Policy No. 902537 and Policy No. 955247, and that said policies were exhausted.

18.     Thereafter, HBCC asserted the extensions and/or stub periods of said policies gave rise to additional coverage and sought additional coverage and payments from First State under Policy No. 902537 and Policy No. 955247.

19.     Thereafter, in or about late 2009, First State discovered that HBCC was not named as an insured under Policy No. 902537, and that HBCC has been benefitted and unjustly enriched in the amount of $2,000,000.00 First State paid under said policy.

FIRST CAUSE OF ACTION
(Declaratory Judgment Against HBCC)

20.     Plaintiff First State hereby re-alleges and incorporates the allegations of paragraphs 1 through 19 of the Complaint as the allegations of paragraphs 1 through 19 of the First Cause of Action of the Complaint.

21.     A genuine, actual, and justiciable controversy exists between and among First State and HBCC as to whether First State owes any further or additional coverage obligations to HBCC with respect to the underlying actions.

22.     Plaintiff First State seeks a declaration that it does not owe any further or additional defense and/or indemnity obligation to HBCC under Policy No. 902537 and under Policy No. 955247 (hereinafter collectively referred to as the "First State Policies"), for the underlying actions, or otherwise, based on one or more of the following grounds:

a.     HBCC has no coverage under First State Policy No. 902537, which does not name HBCC as an insured.

b.     Coverage is barred and/or limited by the applicable limits of liability of the First State Policies.

c.     Coverage is barred and/or limited because there are no additional or stub or further limits or additional aggregate limits by reason of the extensions or stub periods of the First State Policies.

d.     Coverage is barred to the extent there has been a failure to cooperate with First State, a failure to provide information/documentation when requested, and/or a failure to otherwise perform all obligations and conditions under the First State Policies.

e.     Coverage is or may be barred by the equitable doctrine of unclean hands.

f.     First State hereby reserves its right to assert any and all additional defenses to coverage in the future.

4

First State's Complaint

23.     The Court is empowered pursuant to 28 U.S.C. §2201 and Fed. R. Civ. Proc. 57 to provide the requested declaratory relief.

SECOND CAUSE OF ACTION
(*Buss v. Superior Court*, Implied Contract, Money Had and Received,
Money Paid by Mistake, Quasi Contract, Restitution, and Unjust Enrichment, Against HBCC)

24.     Plaintiff First State hereby re-alleges and incorporates the allegations of paragraphs 1 through 19 of the Complaint as the allegations of paragraphs 1 through 19 of the Second Cause of Action of the Complaint.

25.     Defendant HBCC had no potential coverage under First State Policy No. 902537, and First State has a right of reimbursement for the $2,000,000.00 that was paid out under Policy No. 902537, which right is implied in law as quasi-contractual under *Buss v. Superior Court*.

26.     Defendant HBCC is indebted to First State in the amount of $2,000,000.00 for money had and received.

27.     By reason of Defendant HBCC's unjust enrichment by First State's payments of a total of $2,000,000.00 under Policy No. 902537, by mistake, an implied contract, promise, and/or quasi-contract has arisen in favor of Plaintiff for repayment, reimbursement, and/or restitution of said sum.

WHEREFORE, Plaintiff First State Insurance Company prays for judgment against Defendant Hill Brothers Chemical Company as follows:

ON THE FIRST CAUSE OF ACTION

28.     For declaratory judgment against HBCC that First State fully paid, exhausted, and discharged all obligations and coverage under the First State Policies, and that there are no additional obligations, coverage, stub aggregates, additional aggregates, or coverage under the First State Policies.

ON THE SECOND CAUSE OF ACTION

29.     For money from Defendant HBCC in the amount of $2,000,000.00 plus interest thereon as provided by law.

<u>ON ALL CAUSES OF ACTION</u>

30.   For costs of suit.

31.   For such other and further relief as this Court deems just and proper.

DATED:  July _2_, 2010

**SCHWARTZ & JANZEN, LLP**

By: _____
        STEVEN H. SCHWARTZ

First State's Complaint

# EXHIBIT "A"

No. 902537

DECLARATIONS — UMBRELLA LIABILITY POLICY

STOCK COMPANY

Renewal of No.

# FIRST STATE
## INSURANCE COMPANY
WILMINGTON, DELAWARE

Administrative Offices: 60 Batterymarch Street, Boston, Massachusetts 02110

Item 1.  **Named Insured and Mailing Address**

> HILL BROS., INC., SHELL CITY, INC., MILLER ASSOCIATES,
> LESCO CHEMICAL CO. AND HILL BROS. CREDIT UNION
> 3475 N.W. 60th Street
> Miami, Florida

Item 2.  Policy Period:  From     July 6, 1975          To    July 6, 1976

12:01 A.M., Standard Time at the address of the named Insured as stated herein.

Item 3.  Limits of Liability:  The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

$ __2,000,000__     Single limit any one occurrence combined Personal Injury, Property Damage and Advertising Liability in excess of:

A.  The amount recoverable under the underlying insurance as set out in Schedule A attached or

B.  $ __10,000_____ Ultimate net loss as the result of any one occurrence not covered by said underlying insurance.

Item 4.  Premium:

Advance Premium $ __18,000__     Rate .1325   Premium Basis per $1000. of Gross
Minimum & Deposit                                          Receipts

Minimum Premium $12,000.
Minimum & Deposit

If the Policy Period is more than one year and the premium is to be paid in installments, premium is payable on:

| Effective Date | 1st Anniversary | 2nd Anniversary |
|---|---|---|
| $ --- | $ --- | $ --- |

Item 5.  During the past three years no insurer has cancelled insurance, issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned

September 15, 1975 (mid)

C-142-1A

Schedule A                    Schedule of Underlying Policies

Policies                                          Limits of Liability

Comprehensive General Liability Including:        Personal Injury

    Blanket Contractual              $500,000. Each Occurrence
    Products Liability               $500,000. Aggregate
    Liquor Law Liability
                                                  Property Damage

                                                  $100,000. Each Occurrence
                                                  $100,000. Aggregate

Automobile Liability                              Bodily Injury

                                                  $250,000. Each Person
                                                  $500,000. Each Accident

Employers Liability                               $100,000. Each Accident

Policy No. ___902537___

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

C 142-1B

ENDORSEMENT #1

(Contamination or Pollution)

It is agreed that the insurance does not apply to bodily injury
or property damage arising out of the discharge, dispersal,
release or escape of smoke, vapors, soot, fumes, acids,
alkalis, toxic chemicals, liquids or gases, waste materials or
other irritants, contaminants or pollutants into or upon land,
the atmosphere or any watercourse or body of water; but this
exclusion does not apply if such discharge, dispersal, release
or escape is sudden and accidental.

This endorsement to take effect on the 6th day of July, 1975.
All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 902537 of FIRST STATE
INSURANCE COMPANY.

Issued to:  HILL BROS., INC., ET AL

C/P-1

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

ENDORSEMENT #2

Notwithstanding anything contained herein to the contrary, it is agreed that the policy also includes the following with respect to professional liability:

1. The Company will indemnify the Named Insured for ultimate net loss which the Named Insured shall become legally obligated to pay, in excess of the applicable limit of the underlying professional liability insurance policy because of injury arising out of:

   (a) Malpractice, error or mistake of the Insured, or of a person for whose acts or omissions the Insured is legally responsible, in rendering or failure to render professional services, or

   (b) The service by any person as a member of a formal accreditation or similar professional board or committee of the Named Insured, or as a person charged with the duty of executing directives of any such board or committee.

2. Such insurance as afforded by this policy shall not apply:

   (a) unless a liability insurance policy which affords coverage with respect to the rendering or failure to render professional services and such policy or renewal or replacement thereof, is in force at the time of the injury, or

   (b) to any claim for injury not covered under such policy.

This endorsement to take effect on the 6th day of July, 1975. All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 902537 of FIRST STATE INSURANCE COMPANY.

Issued to: HILL BROS., INC., ET AL

P-15

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

ENDORSEMENT #3

It is hereby understood and agreed that the Schedule of Underlying policies is amended to read as follows:

| COMPREHENSIVE GENERAL LIABILITY | LIMITS OF LIABILITY |
|---|---|

Including:

   Blanket Contractual
   Products Liability
   Liquor Law Liability

**Personal Injury**

$500,000. Each Occurrence
$500,000. Aggregate

**Property Damage**

$50,000. Each Occurrence
$100,000. Aggregate



Automobile Liability

**Bodily Injury**

$250,000. Each Person
$500,000. Each Accident

**Property Damage**

$50,000. Each Accident

Employers Liability

$100,000. Each Accident

This endorsement to take effect on the 6th day of July, 1975. All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 902537 of FIRST STATE INSURANCE COMPANY.

Issued to: HILL BROTHERS, INC., ET AL

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



# FIRST STATE INSURANCE COMPANY

**2. Definition of "Named Insured" and "Insured"**

"Named Insured" includes any subsidiary company (including subsidiaries thereof) of the Named Insured and any other company coming under the Named Insured's control of which it assumes active management and of which prompt notice has been given to the Company.

The unqualified word "Insured" includes the Named Insured and also:

(a) if the Named Insured is designated in the Declarations as a partnership or joint venture the partnership or joint ven-

Agrees with the Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

## INSURING AGREEMENTS

**I.  Coverage**

The Company agrees to indemnify the Insured for ultimate net loss in excess of the retained limit hereinafter stated, subject to the limitations, conditions and other terms of this policy, which the Insured may sustain by reason of the liability imposed upon the Insured by law, or assumed by the Insured under contract, on account of:

(a) Personal Injury Liability

For damages and expenses including damages for care and loss of services, to which this insurance applies, because of personal injury, including death at any time resulting therefrom, sustained by any person or persons, caused by an occurrence;

(b) Property Damage Liability

For damages and expenses to which this insurance applies, because of injury to or destruction of tangible property, including consequential loss resulting therefrom, caused by an occurrence;

(c) Advertising Liability

For damages and expenses to which this insurance applies, because of libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of privacy arising out of the Named Insureds' advertising activities, caused by an occurrence;

but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgment or settlement.

**(II) Retained Limit—Limit of Liability**

With respect to Coverage I (a), I (b), or I (c), or any combination thereof, the Company's liability shall be only for the ultimate net loss in excess of the Insured's retained limit defined as the greater of:

(a) an amount equal to the limits of liability indicated beside underlying policy(ies) listed in Schedule A hereof, plus the applicable limit(s) of any other underlying insurance collectible by the Insured or

(b) the amount shown in Item 3 (B) of the Declarations as the result of any one occurrence not covered by the said policy(ies) or insurance:

and then for an amount not exceeding the amount shown in Item 3 of the Declarations as the result of any one occurrence. There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of the Company arising out of the products hazard, completed operations hazard or occupational diseases of employees of the Named Insured on account of all occurrences during each policy year shall not exceed the amount shown in Item 3 of the Declarations as the result of any one occurrence.

In the event of the reduction or exhaustion of the aggregate limit(s) of liability of the underlying policy(ies) listed in Schedule A by reason of losses paid thereunder, this policy, subject to the above limitations, (1) in the event of reduction, shall pay the excess of the reduced underlying limit(s) or (2) in the event of exhaustion, shall continue in force as underlying insurance. The Company's total limit of liability, in respect to (1) and (2) above only, shall not exceed the single limit any one occurrence stated in Item 3 of the Declarations on account of all occurrences happening during each annual period commencing with the effective or anniversary date of the policy.

## EXCLUSIONS

This policy shall not apply:

(a) under Coverage I (a), to any obligation for which the Insured or any of its insurers may be held liable under any workmen's or unemployment compensation, disability benefits or similar law, provided, however, that this exclusion does not apply to liability of others assumed by the Named Insured under contract;

(b) under Coverage I (b), to injury to or destruction of (1) property owned by the Insured or (2) property rented to, occupied or used by or in the care, custody or control of the Insured to the extent the Insured is under contract to provide insurance therefor;

(c) under Coverage I (a), and I (b) to liability for:

(1) personal injury or property damage resulting from the failure of the Named Insureds products or work completed by or for the Named Insured to perform the function or serve the purpose intended by the Named Insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specification, advertising material or printed instruction prepared or developed by any Insured. This exclusion does not apply to personal injury or property damage resulting from the active malfunctioning of such products or work;

(2) property damage to the Named Insureds products arising out of such products or any part of such products;

(3) property damage to work performed by or on behalf of the Named Insured, arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(4) damages claimed for the withdrawal, inspection, repair, replacement or loss of use of the Named Insureds products or work completed by or for the Named Insured, or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(d) under Coverage I (c), to liability for (1) failure of performance of contract, (2) infringement of trade mark, service mark or trade name or goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans, (3) incorrect description of any article or commodity, or (4) mistake in advertised price;

(e) under Coverage I (a) and I (b), to liability arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft owned by the Insured;

## EXCLUSIONS (continued)

(f)I. under any Liability Coverage, to injury, sickness, disease, death or destruction

   (a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization;

II. under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

III. under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

   (a) the nuclear material (1) is at any nuclear facility owned by or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom:

   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

   (c) the injury, sickness, disease, death, or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this policy:

   "hazardous properties" include radioactive, toxic or explosive properties;

   "nuclear material" means source material, special nuclear material or byproduct material;

   "source material", "special nuclear material" and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;

   "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means:

   (a) any nuclear reactor,

   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

with respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

(g) to any liability of the Insured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

**Except insofar as coverage is available to the Insured in the Underlying Insurance as set forth in the attached Schedule A of Underlying Insurance this Policy shall not apply:**

(h) to liability of any Insured hereunder for assault and battery committed by or at the direction of the Insured except liability for personal injury or death resulting from any act alleged to be assault and battery committed for the purpose of preventing or eliminating danger in the operation of aircraft, or for the purpose of preventing personal injury or property damage; it being understood and agreed that this exclusion shall not apply to the liability of the Named Insured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(i) with respect to any watercraft owned by the Insured, while away from premises owned, rented or controlled by the Insured, except liability of the Named Insured for watercraft not owned by them; it being understood and agreed that this exclusion shall not apply to the liability of the Named Insured for personal injury to their employees, unless such liability is already under Exclusion (a) above;

(j) to any employee with respect to injury or the death of another employee of the same employer injured in the course of such employment.



The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Attach Declarations and Endorsement(s) Here

## DEFINITIONS

1. **Policy Period, Territory**
This policy applies only to occurrences happening anywhere in the world during the policy period.

2. **Definition of "Named Insured" and "Insured"**
"Named Insured" includes any subsidiary company (including subsidiaries thereof) of the Named Insured and any other company coming under the Named Insured's control of which it assumes active management and of which prompt notice has been given to the Company.
The unqualified word "Insured" includes the Named Insured and also:

    (a) If the Named Insured is designated in the Declarations as a partnership or joint venture the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such; however, this policy does not apply to personal injury, property damage or advertising offense arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this policy as a Named Insured;

    (b) any person, organization, trustee or estate to whom or to which the Named Insured is obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to operations by or in behalf of the Named Insured or to facilities of or used by the Named Insured;

    (c) any additional Insured, other than the Named Insured, included in the underlying policy(ies) listed in Schedule A but only to the extent that insurance is provided to such additional Insured thereunder;

    (d) except with respect to liability arising out of the ownership, operation, maintenance, use, loading and unloading of automobiles or aircraft;

      (1) any executive officer, other employee, director or stockholder thereof while acting within the scope of his duties as such;

      (2) any organization or proprietor with respect to real estate management for the Named Insured;

    (e) any person while using an automobile owned by or automobile or aircraft loaned to the Named Insured or hired for use in behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual use of the automobile or aircraft is by the Named Insured or with the Named Insured's permission, and any executive officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft not owned by the Named Insured in the business of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply under division (d) of this definition:

      (1) to any person or organization, or to any agent or employee thereof; operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any occurrence arising out of the operation thereof.

      (2) with respect to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or a lessee thereof other than the Named Insured, or to any agent or employee of such owner or lessee;

      (3) to any manufacturer of aircraft, aircraft engines, or aviation accessories, or any aviation sales or service or repair organization or airport, or hangar operator or their respective employees or agents, with respect to any occurrence arising out of the operation thereof.

3. **Personal Injury**
"Personal Injury" means (1) bodily injury, sickness, disease, disability, shock, mental anguish and mental injury; (2) false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation; (3) unless arising out of any advertising activities, libel, slander, defamation of character or invasion of rights of privacy.

4. **Ultimate Net Loss**
"Ultimate Net Loss" means the sum actually paid or payable in cash in the settlement or satisfaction of losses for which the Insured is liable either by adjudication or compromise with the written consent of the Company, including after making proper deduction for all recoveries and salvages collectible, all loss expenses and legal expenses (including attorneys' fees, court costs and interests on any judgment or award) but excludes all salaries of employees and office expenses of the Insured, the Company or any underlying insurer so incurred.
The policy shall not apply to defense, investigation, settlement or legal expenses covered by underlying insurance.

5. **Products Hazard**
"Products Hazard" includes personal injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from the premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others.

6. **Named Insureds Products**
"Named Insureds Products" means goods or products manufactured, sold, handled, or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but the Named Insured's products shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

7. **Completed Operations Hazard**
"Completed Operations Hazard" includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

    (1) when all operations to be performed by or on behalf of the Named Insured under all contracts have been completed,

    (2) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or

    (3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair, or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
The completed operations hazard does not include personal injury or property damage arising out of:

    (a) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

    (b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

    (c) operations for which the classification stated in the underlying insurance specifies "including completed operations."

8. **Occurrence**
With respect to Coverages I (a) and I (b) "occurrence" shall mean an accident, including injurious exposure to conditions, which results, during the policy period, in personal injury or property damage neither expected nor intended from the standpoint of the Insured. For the purpose of determining the limit of the Company's liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.
With respect to Coverage I (c), all damages involving the same injurious material or act, regardless of the frequency or repetition thereof, the number or kind of media used, and the number of claimants shall be deemed to arise out of one "occurrence."

## CONDITIONS

**A.   Premium Computation:**   The deposit premium stated in the declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

**B.   Inspection and Audit:**   The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Named Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**C.   Severability of Interests:**   The term "Insured" is used severally and not collectively except with respect to Insuring Agreement II (Retained Limit-Limit of Liability) and Condition H. (Other Insurance). The inclusion in this policy of more than one Insured shall not operate to increase the Company's total liability for all Insureds covered by this policy beyond the limits set forth in Item 3 of the Declarations.

**D.   Notice of Occurrence:**   Upon the happening of an occurrence reasonably likely to involve the Company hereunder, written notice shall be given as soon as practicable to the Company or any of its authorized agents. Such notice shall contain particulars sufficient to identify the Insured and the fullest information obtainable at the time. The Named Insured shall promptly take at his expense all reasonable steps to prevent other personal injury or property damage or advertising offense from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.

The Insured shall give like notice of any claim made on account of such occurrence. If legal proceedings are begun the Insured, when requested by the Company, shall forward to it each paper thereon, or a copy thereof, received by the Insured or the Insured's representatives, together with copies of reports of investigations made by the Insured with respect to such claim proceedings.

**E.   Action Against Company:**   No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

**F.   Assistance and Co-operation:**   Except as provided in Insuring Agreement II (Retained Limit—Limit of Liability) with respect to the exhaustion of the aggregate limit(s) of the underlying policy(ies) listed in Schedule A, or in Condition I. (Underlying Insurance), the Company shall not be called upon to assume charge of the settlement or defense of any claim made or proceedings instituted against the Insured; but the Company shall have the right and opportunity to associate with the Insured in the defense and control of any claim or proceedings reasonably likely to involve the Company. In such event the Insured and the Company shall cooperate fully.

**G.   Appeals:**   In the event the Insured or the Insured's underlying insurer elects not to appeal a judgment in excess of the retained limit, the Company may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interests incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in Insuring Agreement II (Retained Limit—Limit of Liability) for any one occurrence plus the taxable costs, disbursements and interest incidental to such appeal.

**H.   Other Insurance:**   If other collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the retained limit and the limit of liability hereunder), the insurance hereunder shall be in excess of, and not contribute with, such other insurance. If collectible insurance under any other policy(ies), of the Company is available to the Insured, covering a loss also covered hereunder (other than underlying insurance of which the Insurance afforded by this policy is in excess), the Company's total liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such policy(ies).

**In Witness Whereof,** the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

If other collectible insurance under any policy(ies) of the Company is available to the Insured, the ultimate net loss as the result of any one occurrence not covered by underlying insurance shall not be cumulative.

**I.   Underlying Insurance:**   If underlying insurance applicable in any one occurrence is exhausted by payment of judgment or settlement on behalf of the Insured, the Company shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the Insured resulting from the same occurrence, but only where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another insurer.

**J.   Subrogation:**   The Company shall be subrogated to the extent of any payment hereunder to all the Insured's rights of recovery therefor; and the Insured shall do nothing after loss to prejudice such rights and shall do everything necessary to secure such rights. Any amount so recovered shall be apportioned as follows:

Any interest (including the Insured's) having paid an amount in excess of the retained limit plus the limit of liability hereunder shall be reimbursed first to the extent of actual payment. The Company shall be reimbursed next to the extent of its actual payment hereunder. If any balance then remains unpaid, it shall be applied to reimburse the Insured or any underlying insurer, as their interest may appear. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, it shall bear the expenses thereof.

**K.   Changes:**   Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

**L.   Assignment:**   Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Named Insured's legal representative as Named Insured; provided that notice of cancellation addressed to the Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**M.   Cancellation:**   This policy may be canceled by the Named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the Company or its representative, mailed or delivered, shall be sufficient tender of any refund due the Named Insured.

If this policy insures more than one Named Insured, cancellation may be effected by the first of such Named Insureds for the account of all Insureds' and notice of cancellation by the Company to such first Named Insured shall be notice to all Insureds. Payment of all unearned premium to such first Named Insured shall be for the account of all interests therein.

**N.   Maintenance of Underlying Insurance:**   It is warranted by the Insured that the underlying policy(ies) listed in Schedule A, or renewals or replacements thereof not more restricted, shall be maintained in force during the currency of this policy, except for any reduction of the aggregate limit(s) contained therein solely by payment of claims in respect of occurrences happening during the policy period. In the event of failure by the Insured so to maintain such policy(ies) in force, the Insurance afforded by this policy shall apply in the same manner it would have applied had such policy(ies) been so maintained in force.

**O.   Terms of Policy, Conformed to Statutes:**   Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

# EXHIBIT "B"



No. 955247

STOCK COMPANY

DECLARATIONS — UMBRELLA LIABILITY POLICY

NEW
Renewal No.

LR
PC

# FIRST STATE
## INSURANCE COMPANY
### WILMINGTON, DELAWARE
Administrative Offices: 60 Batterymarch Street, Boston, Massachusetts 02110

RECEIVED
P.C. DEPT.

**Item 1.   Named Insured and Mailing Address**

HILL BROTHERS CHEMICAL COMPANY & HILL BROTHERS
CHEMICAL COMPANY PROFIT SHARING TRUST
One City Boulevard
Orange, California 92668

**Item 2.   Policy Period:   From      April 30, 1984      To:   April 30, 1985**

12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

**Item 3.**   Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto:

$ 24,500,000, Single limit any one OCCURRENCE combined PERSONAL INJURY, PROPERTY DAMAGE and ADVERTISING INJURY or DAMAGE in excess of:

A.   The amount recoverable under the underlying insurance as set out in Schedule A attached or

B.   $ 10,000        Ultimate net loss as the result of any one occurrence not covered by said underlying insurance.

II.   $ 24,500,000, Limit in the aggregate for each annual period with respect to:

A.   The PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined, or

B.   Occupational Disease sustained by employees of the INSURED.

JUL 1 1984

**Item 4.   Premium**

Advance Premium $ 23,750.00   Rate  Flat        Premium Basis

Minimum Premium $ 23,750.00

If the Policy Period is more than one year and the premium is to be paid in installments, premium is payable on:

RECEIVED
JUN 25 1984
F. E. VOUCHERING

Effective Date                       1st Anniversary                2nd Anniversary

$                                     $                              $

RECEIVED
W 2 2 1984

XG6

**Item 5.**   Warranted that, during the past ____ years, no insurer has cancelled insurance issued to the NAMED INSURED, similar to that afforded herein.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute the policy.



LR

## SCHEDULE A

### UNDERLYING INSURANCE

**COMPREHENSIVE GENERAL LIABILITY**

Including:

Broad Form Property Damage
Personal Injury
Blanket Contractual
Liquor Liability (Host)
Blanket XCU
Vendors Liability

Insurer: Continental Insurance Co.
Policy #: LBA #0771

**LIMITS OF LIABILITY**

$500,000. Combined
Single Limit each occurrence
and Aggregate where
applicable

**AUTOMOBILE LIABILITY**

Insurer: Continental Insurance Co.
Policy #: LBA #796244

$500,000. Combined
Single Limit Each
Occurrence

**EMPLOYERS LIABILITY**

Insurer: Argonaut Insurance Co.
Policy #: To Be Advised

$200,000. each accident
(California)
$100,000. each accident
(Other States)

**PRODUCTS/COMPLETED OPERATIONS**

Insurer: United National Insurance Co.
Policy #: To Be advised

$500,000. Combined
Single Limit each Occurrence
and aggregate

Policy #955247

The company located these documents in its
business records. At this time, the company
... complete and accurate ... by the policy

*Pot Lursey - 7-23-84*

LR

ENDORSEMENT #1

It is agreed that Item 1.  <u>Coverage</u> of the Umbrella Insuring
Agreements is hereby amended in part as follows:

Delete  "....indemnify the Insured for..."

Substitute "...pay on behalf of
the Insured..." therefor

This endorsement to take effect on the 30th day of April, 1984.
All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 955247 of
FIRST STATE INSURANCE COMPANY.

Issued to:  HILL BROTHERS CHEMICAL COMPANY & HILL BROTHERS
CHEMICAL PROFIT SHARING TRUST

Dated:  June 13, 1984

The company located these documents in its
business records. At this time, the company
does not ... that these documents constitute
a complete and accurate copy of the policy.

*Pat Conley - 7-23-84*

LR

ENDORSEMENT #2

### BROAD AS PRIMARY WORDING AMENDMENT

It is hereby understood and agreed that in the event the Insured suffers a loss which is covered under the policies of the underlying insurances as set out in the schedule attached to this policy, the excess of which would be payable under this policy, except for terms and conditions of this policy which are not consistent with the underlying insurance, then notwithstanding anything contained in this policy to the contrary, this policy shall be amended to follow and be subject to the terms and conditions of such underlying insurances in respect of such paid loss.

The foregoing shall not, however, apply to:

1. Any coverage given under the underlying insurances for limits less than the full limit of the said underlying policy as stated in the schedule hereto.

2. Any nuclear incident exclusion clause attached to this policy.

3. Any seepage and pollution exclusion clause attached to this policy.

4. Exclusion (A) of this policy (Workers' Compensation exclusion)

5. Exclusion (G) of this policy (War risk exclusion)

6. Any exclusion or limitation specifically added to this policy by endorsement.

This endorsement to take effect on the 30th day of April, 1984. All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 955247 of FIRST STATE INSURANCE COMPANY.

Issued to:  HILL BROTHER CHEMICAL & HILL BROTHER CHEMICAL COMPANY PROFIT SHARING TRUST

Dated:  June 13, 1984

The company located these documents in its business records. At this time, the company does not verify that these documents constitute a complete and accurate copy of the policy.

*Pat Conley - 7-23-84*

LR

ENDORSEMENT #3

PROPERTY DAMAGE LIMITATION

ALL PROPERTY

It is agreed that this policy shall not apply to any liability for property damage to property

(1) owned or occupied by or rented to the Insured,

(2) used by the Insured, or

(3) in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control;

unless such liability is covered by valid and collectible underlying insurance as described in the schedule of underlying insurance, and then only for such hazards for which coverage is afforded under said underlying insurance.

This endorsement to take effect on the 30th day of April, 1984. All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 955247 of FIRST STATE INSURANCE COMPANY.

Issued to: HILL BROTHERS CHEMICAL COMPANY & HILL BROTHERS CHEMICAL COMPANY PROFIT SHARING TRUST

Dated: June 13, 1984

The company located these documents in its business records. At this time, the company ...

*Pat Conley - 7-23-84*

LR

ENDORSEMENT #4

AMENDMENT OF CANCELLATION CONDITION

Notwithstanding anything contained herein to the contrary, this Policy may be cancelled by this company at any time for failure of the Insured to pay any premium when due by mailing or delivering to the Insured written notice stating when, not less than 10 days thereafter, such cancellation shall be effective.

This endorsement to take effect on the 30th day of April, 1984. All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 955247 of FIRST STATE INSURANCE COMPANY.

Issued to:   HILL BROTHERS CHEMICAL COMPANY & HILL BROTHERS
             CHEMICAL COMPANY PROFIT SHARING TRUST

Dated:  June 13, 1984

The company located these documents in its business records. At this time, the company

*Pat Conley - 7-23-84*

LR

## ENDORSEMENT #5

### PENSION REFORM ACT

In consideration of the premium charged it is hereby agreed that coverage afforded hereunder does not apply to any loss or claim based upon the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as The Pension Reform Act of 1974, and amendments thereto, or similar provisions of any Federal, State or Local Statutory Law or Common Law.

This endorsement to take effect on the 30th day of April, 1984. All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 955247 of FIRST STATE INSURANCE COMPANY.

Issued to: HILL BROTHERS CHEMICAL COMPANY & HILL BROTHERS CHEMICAL COMPANY PROFIT SHARING TRUST

Dated: June 13, 1984

PS-2

The company located these documents in its business records. At this time, the company does not certify that these documents constitute complete and accurate copy of the policy.

Maria T.  10-30-84

LR

ENDORSEMENT #6

It is understood and agreed that the Named Insured, as specified in Item 1. of the Policy Declarations, is hereby amended to read:

HILL BROTHERS CHEMICAL CO.; HILL BROTHERS CHEMICAL CO. PROFIT SHARING TRUST AND/OR ANY OTHER WHOLLY OWNED OR FINANCIALLY CONTROLLED SUBSIDIARY OR PROPRIETARY COMPANY OR CORPORATION NOW EXISTING OR WHICH MAY EXIST HEREAFTER AND/OR ANY EMPLOYEE THERE OF WHILE ACTING WITHIN THE SCOPE OF THEIR DUTIES AS SUCH AND DONALD A. HILL, RICHARD C. HILL, DEAN C. HILL, AND DOUGLAS B. HILL AS INDIVIDUALS.

This endorsement to take effect on the 30th day of April, 1984. All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 955247 of FIRST STATE INSURANCE COMPANY.

Issued to:  HILL BROTHERS CHEMICAL COMPANY & HILL BROTHERS CHEMICAL COMPANY PROFIT SHARING TRUST

Dated: October 19, 1984

The company located these documents in its business records. At this time, the company [illegible] a complete and accurate copy of the [illegible]

Maria T.   10-30-84

ENDORSEMENT #9

LR

## INDIVIDUAL AS NAMED INSURED ENDORSEMENT

It is agreed that if any named insured designated in the declarations is an individual, coverage under this policy for such individual named insured shall apply only with respect to the conduct of a business of which he is the sole proprietor.

The term "business" includes trade, profession or occupation and the ownership, maintenance or use of farms, and of property rented in whole or in part to others, or held for such rental, by the named insured.  The following use of the named insured's property shall not constitute business:

   (1)  Occasional rental of the named insured's residence;

   (2)  rental in whole or in part to others of a one or two-family dwelling usually occupied in part by the named insured as a residence, unless such rental is for the accommodation of more than two roomers or boarders.

RECEIVED

OCT 20 693 4

F. S. VOUCHERING
BOSTON

This endorsement to take effect on the 30th day of April, 1984. All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 955247 of FIRST STATE INSURANCE COMPANY.

Issued to:   HILL BROTHERS CHEMICAL COMPANY & HILL BROTHERS CHEMICAL COMPANY PROFIT SHARING TRUST

Dated:  October 19, 1984

The company located these documents in its business records. At this time, the company

ENDORSEMENT #8

It is agreed that the Named Insured's mailing address, per Policy
Declarations, is amended to read as follows:

1675 N. Main Street
Orange, California 92667

RECEIVED
F.S. VOUCHERING
BOSTON

This endorsement to take effect on the 21st day of December, 1984.
All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 955247 of
FIRST STATE INSURANCE COMPANY

Issued to:   HILL BROTHERS CHEMICAL COMPANY & HILL
             BROTHERS CHEMICAL COMPANY PROFIT SHARING TRUST

Dated: March 4, 1985

The company located these documents in its
business records. At this time, the company

ENDORSEMENT #9

It is agreed that as respects the Schedule of Underlying Insurance, COMPREHENSIVE GENERAL LIABILITY, the Insurer and Policy Number is hereby amended to:

Insurer:  Harbor Insurance Co.
Policy #:  GLA 16059

It is further agreed that as respects the Schedule of Underlying Insurance, AUTOMOBILE LIABILITY, the Insurer and Policy Number is hereby amended to:

Insurer:  Harbor Insurance Co.
Policy #:  BA 158145

RECEIVED

F. S. VOUCHERING
BOSTON

This endorsement to take effect on the 1st day of December, 1984. All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 955247 of FIRST STATE INSURANCE COMPANY.

Issued to:  HILL BROTHERS CHEMICAL COMPANY & HILL BROTHERS CHEMICAL COMPANY PROFIT SHARING TRUST

Dated:  March 4, 1985

The company located these documents in its business records. At the time, the company...

*Kelly Murphy 5·28·85*

LR

ENDORSEMENT #10

Additional Premium: $651.00

In consideration of the Additional Premium specified above, it is agreed that this policy is hereby amended to expire on May 10, 1985.

It is further agreed that the aggregate limit of liability, as specified in Item 3. II. of the Declarations, shall apply for the policy period in lieu of annual period.

This endorsement to take effect on the 30th day of April, 1985. All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 955247 of FIRST STATE INSURANCE COMPANY.

Issued to:   HILL BROTHERS CHEMICAL COMPANY & HILL BROTHERS CHEMICAL COMPANY PROFIT SHARING TRUST

Dated:  May 8, 1985.

The company located these documents in its business records. At this time, the company does not certify the authenticity, accuracy, or completeness of the policy.



FIRST STATE INSURANCE COMPANY   (hereinafter the Company)   Agrees with the INSURED, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

## INSURING AGREEMENTS

### I.   COVERAGE

To indemnify the INSURED for ULTIMATE NET LOSS, as defined hereinafter, in excess of RETAINED LIMIT, as herein stated, all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of:

    A.   PERSONAL INJURY, as hereinafter defined;

    B.   PROPERTY DAMAGE, as hereinafter defined;

    C.   ADVERTISING INJURY OR DAMAGE, as hereinafter defined,

to which this policy applies, caused by an OCCURRENCE, as hereinafter defined, happening anywhere in the world.

### II.   UNDERLYING LIMIT—RETAINED LIMIT

The Company shall be liable only for the ULTIMATE NET LOSS in excess of the greater of the INSURED'S:

    A.   UNDERLYING LIMIT—an amount equal to the limits of liability indicated beside the underlying insurance listed in the Schedule A of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED; or

    B.   RETAINED LIMIT—The amount specified in Item 3 I.B of the Declarations as the result of any one occurrence not covered by said underlying insurance, and which shall be borne by the INSURED.

### III.   LIMITS OF LIABILITY

Regardless of the number of persons and organizations who are INSUREDS under this policy and regardless of the number of claims made and suits brought against any or all INSUREDS, the total limit of the Company's liability for ULTIMATE NET LOSS resulting from any one OCCURRENCE shall not exceed the amount specified in Item 3 I of the declarations.

The Company's liability shall be further limited to the amount stated as the annual aggregate limit in Item 3 II of the declarations on account of all OCCURRENCES during each policy year arising out of:

    A.   either the PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined; or

    B.   occupational disease by all employees of the INSURED.

In the event that the aggregate limits of liability of the underlying policies, listed in the schedule of underlying insurance, are exhausted solely as the result of OCCURRENCES taking place after the inception date of this policy, this policy shall, subject to the Company's limit of liability and to other terms of this policy, with respect to OCCURRENCES which take place during the period of this policy, continue in force as underlying insurance for the remainder of the policy year of the underlying policy or until the aggregate limit of liability as stated in Item 3 II is exhausted, but not for broader coverage than was provided by the exhausted underlying insurance.

In the event that the aggregate limits of liability of the underlying insurance are exhausted or reduced as the result of OCCURRENCES taking place prior to the inception date of this policy, the Company shall only be liable to the same extent as if the aggregate limits had not been so exhausted or reduced.

For the purpose of determining the limit of the Company's liability:

    (a)   all PERSONAL INJURY and PROPERTY DAMAGE arising out of continuous or repeated exposure to substantially the same general conditions, and

    (b)   all ADVERTISING INJURY OR DAMAGE involving the same injurious material or act, regardless of the number or kind of media used, or frequency of repetition thereof, whether claim is made by one or more persons

shall be considered as arising out of one OCCURRENCE.

### IV.   DEFENSE—SETTLEMENT

    A.   With respect to any OCCURRENCE not covered, as warranted, by the underlying policies listed in Schedule A hereof, whether collectible or not, or not covered by any other underlying insurance collectible by the INSURED, but covered by the terms and conditions of this policy, except for the RETAINED LIMIT stated in Item 3 I.B of the Declarations, the Company shall:

    1.   defend any suit against the insured alleging PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE and seeking damages therefor, even if such suit is groundless, false or fraudulent; but the COMPANY may make such investigation, negotiation or settlement of any claim or suit as it deems expedient. The INSURED shall promptly reimburse the COMPANY for any amount paid in the satisfaction of cases defended hereunder within the retained limit after making proper deduction for all recoveries and salvage collectible, but excluding all loss expense and legal expense.

    2.   with respect to any suit defended under the terms of this coverage, in addition to the applicable limit of liability under this policy the COMPANY will:

        (a)   pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds;

        (b)   pay all expenses incurred by the COMPANY, all costs taxed against the INSURED in any such suit and all interest accruing after the entry of judgment until the COMPANY has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the COMPANY'S liability thereon;

        (c)   pay reasonable expenses incurred by the INSURED at the COMPANY'S request in assisting the COMPANY in the investigation or defense of any claim or suit including actual loss of earnings not to exceed $25 per day, but the COMPANY shall not be required to reimburse the INSURED for salaries of employees of the INSURED.

In jurisdictions where the COMPANY may be prevented by law or otherwise from carrying out this agreement, the COMPANY shall pay any expense incurred with its written consent in accordance with this agreement.

    B.   When underlying insurance, whether or not listed in Schedule A, does apply to an OCCURRENCE, the COMPANY shall have no duty to pay defense, investigation, settlement or legal expenses covered by such underlying insurance; however, the COMPANY shall have the right and opportunity to associate with the INSURED and any underlying insurer in the defense and control of any claim or suit reasonably likely to involve the COMPANY under this policy.

C-142-2   8-80

## EXCLUSIONS

This policy shall not apply:

A. under Coverage I (A), to any obligation for which the INSURED or any of its insurers may be held liable under any worker's or unemployment compensation, disability benefits or similar law, provided, however, that this exclusion does not apply to liability of others assumed by the NAMED INSURED under contract;

B. under Coverage I (B), to injury to or destruction of or loss of (1) property owned by the INSURED or (2) property rented to, occupied or used by or in the care, custody or control of the INSURED to the extent the INSURED is under contract to provide insurance therefore; or (3) any goods, products or containers thereof, manufactured, sold, handled or distributed, or work completed by or for the INSURED, out of which the OCCURRENCE arises.

C. under Coverage I (A) and I (B) for PERSONAL INJURY or PROPERTY DAMAGE, or under I (B) to loss of use of tangible property which has not been physically injured or destroyed, resulting from:

(1) a delay in or lack of performance by or on behalf of the INSURED of any contract or agreement or

(2) the failure of the INSURED'S products or work performed by or on behalf of the INSURED to meet the level of performance, quality, fitness or durability warranted or represented by the INSURED; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the INSURED'S products or work performed by or on behalf of the INSURED have been put to use by any person or organization other than an INSURED.

(3) damages claimed for the withdrawal, inspection, repair, replacement or loss of use of the INSURED'S products or work completed by or for the INSURED, or of any property of which such products or work form a part, if such products work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

D. under Coverage I (A) and I (B), to liability arising out of the ownership, maintenance, operation, use, loading, or unloading of aircraft owned by the insured, or, without crew, loaned to, leased to, rented to or chartered by or on behalf of the INSURED.

E. under Coverage I (C), to liability for (1) failure of performance of contract, (2) infringement of trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans, (3) incorrect description of any article or commodity, or (4) mistake in advertised price;

F. I. under any Liability Coverage, to injury, sickness, disease, death or destruction.

(a) with respect to which an INSURED under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization;

II. under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

III. under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by or operated or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an INSURED; or

(c) the injury, sickness, disease, death, or destruction arises out of the furnishing by an INSURED of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this policy:

"hazardous properties" means source material, special nuclear material or byproduct material;

"source material", "special nuclear materials" and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any product or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means:

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used where any of the foregoing is located, all operations conducted on such site and all premises used for operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; with respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

G. to any liability of the INSURED directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or naturalization or requisition or destruction of damage to property by or under the order of any government or public or local authority.

H. to any liability of any INSURED arising out of racial, religious, sex or age discrimination.

I. this policy shall not apply, unless insurance is provided by a policy listed in the schedule of underlying insurance, and then for no broader coverage than is afforded by such insurance:

I. to liability of any INSURED hereunder for assault and battery committed by or at the direction of the INSURED except liability for personal battery committed for the purpose of preventing or eliminating danger in the operation of aircraft, or for the purpose of preventing PERSONAL INJURY or PROPERTY DAMAGE; it being understood and agreed that this exclusion shall not apply to the liability of the NAMED INSURED for PERSONAL INJURY to their employees, unless such liability is already excluded under Exclusion (A) above;

II. with respect to any watercraft owned by an INSURED, while away from premises owned, rented or controlled by the INSURED, except liability of the NAMED INSURED for watercraft not owned by them; it being understood and agreed that this exclusion shall not apply to the liability of the NAMED INSURED for personal injury to their employees, unless such liability is already excluded under Exclusion (A) above;

III. to liability of any INSURED or any employee of said INSURED with respect to personal injury to or death of another employee of the same employer injured in the course of such employment;

IV. to liability arising out of (1) the ownership, maintenance, operations, use, loading or unloading of any mobile equipment while being used in any prearranged or organized racing, speed or demolition contest or activity or (2) the operation or use of any snowmobile or trailer designed for use therewith;

V. to any liability of any INSURED for property damage to the property of another INSURED; At this time, the company does not...

VI. to any liability of any INSURED arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden and accidental.

## DEFINITIONS

When used in this policy, the following words and phrases shall have the following meaning:

**A.   ADVERTISING INJURY OR DAMAGE:** means
   (1)  libel, slander or defamation,
   (2)  any infringement of copyright or title or slogan,
   (3)  piracy or unfair competition or idea misappropriation under an implied contract,
   (4)  any invasion of right of privacy;
   committed or alleged to have been committed during the policy period, in any advertisement, publicity article, broadcast or telecast and arising out of insured's advertising activities.

**B.   AIRCRAFT:**
Means any heavier than air or lighter than air aircraft designed to transport persons or property.

**C.   AUTOMOBILE:**
Means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment.

**D.   COMPLETED OPERATIONS HAZARD:**
  1.  Includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the INSURED. "Operations" include materials, parts or equipment furnished in connection therewith.

    Operations shall be deemed completed at the earliest of the following times:
    (a)  when all operations to be performed by or on behalf of the insured under the contract have been completed,
    (b)  when all operations to be performed by or on behalf of the insured at the site of the operations have been completed, or
    (c)  when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as a part of the same project.

    Operations which may require further service or maintenance work or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

  2.  The completed operations hazard does not include personal injury or property damage arising out of:
    (a)  operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,
    (b)  the existence of tools, uninstalled equipment or abandoned or unused materials.

**E.   INSURED:**
Each of the following is an INSURED to the extent set forth below:
   (1)  the NAMED INSURED, meaning the NAMED INSURED stated in Item 1 of the declarations and any subsidiary, owned or controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company.
   (2)  any person (other than an employee of the NAMED INSURED) or organization while acting as real estate manager for the NAMED INSURED,
   (3)  any INSURED (not being the NAMED INSURED under this policy) included in the schedule of underlying insurance, but not for broader coverage than is available to such INSURED under the scheduled underlying insurance,
   (4)  except with respect to the ownership, maintenance, operation, use, loading or unloading of automobiles, aircraft or watercraft, any officer, director or stockholder of the NAMED INSURED, while acting within the scope of his duties as such: but this subparagraph (4) shall not apply if it restricts the insurance granted under subparagraph (3) above.
   (5)  If the NAMED INSURED is designated in the declarations as a partnership or joint venture, any partner or member thereof, but only with respect to the liability incurred in the operation of that partnership or joint venture: however, this policy does not apply to any automobile owned by or registered in the name of any partner.

**F.   INSURED'S PRODUCTS:**
Means goods or products manufactured, sold, handled or distributed by the INSURED or by others trading under the INSURED'S name, including any container thereof (other than a vehicle), but the INSURED'S products shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

**G.   MOBILE EQUIPMENT:**
Means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled:
   (1)  not subject to motor vehicle registration, or
   (2)  maintained for use exclusively on premises owned by or rented to the INSURED, including the ways immediately adjoining, or
   (3)  designed for use principally off public roads, or
   (4)  designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills, concrete mixers (other than the mix-in-transit type), graders, scrapers, rollers and other road construction or repair equipment, air compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment.

**H.   OCCURRENCE:**
With respect to Coverage I (A) and I (B) "OCCURRENCE" shall mean an accident or event including continuous repeated exposure to conditions, which results, during the policy period, in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. For the purpose of determining the limit of the Company's liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one OCCURRENCE.
   With respect to Coverage I (C), all damages involving the same injurious material or act, regardless of the frequency of repetition thereof, the number or kind of media used, and the number of claimants shall be deemed to arise out of one "OCCURRENCE."

**I.   PERSONAL INJURY:**
The term PERSONAL INJURY wherever used herein means;
   (1)  bodily injury, sickness, disease, disability or shock, including death at any time resulting therefrom, mental anguish and mental injury,
   (2)  false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention or malicious prosecution,
   (3)  Libel, slander, defamation of character, humiliation or invasion of the rights of privacy, unless arising out of advertising activities,
  which occurs during the policy period.

**J.   PRODUCTS HAZARD:**
Includes PERSONAL INJURY and PROPERTY DAMAGE arising out of the INSURED'S products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the INSURED and after physical possession of such products has been relinquished to others.

**K.   PROPERTY DAMAGE:**
The term PROPERTY DAMAGE wherever used herein means:
   (1)  physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, and
   (2)  loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an OCCURRENCE during the policy period.

**L.   ULTIMATE NET LOSS:**
Means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the INSURED is legally liable after making deductions for all other recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy and also includes investigation, adjustment, appraisal, appeal and defense costs paid or incurred by the INSURED with respect to damages covered hereunder. "ULTIMATE NET LOSS" does not include (a) costs and expenses which an underlying insurer has paid or incurred or is obligated to pay to or on behalf of the INSURED, (b) office costs and expenses of the INSURED and salaries and expenses of employees of the INSURED or (c) general retainer fees of counsel retained by the INSURED.

The company shall send these documents in its possess records. At this time, the company

## CONDITIONS

**A.   Premium Computations:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the NAMED INSURED shall pay the excess to the COMPANY; if less, the COMPANY shall return to the NAMED INSURED the unearned portion paid by such INSURED. The NAMED INSURED shall maintain adequate records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the COMPANY at the end of the policy period, as the COMPANY may direct.

## CONDITIONS (continued)

**B. Inspection and Audit:** The COMPANY shall be permitted but not obligated to inspect the NAMED INSURED'S property and operations at any time. Neither the COMPANY'S right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the NAMED INSURED or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The COMPANY may examine and audit the NAMED INSURED'S books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**C. Severability of Interest:** The term "INSURED" is used severally and not collectively except with respect to Insuring Agreement II (UNDERLYING LIMITS—RETAINED LIMITS), Insuring Agreement III (LIMITS OF LIABILITY) and Condition H (Other Insurance). The inclusion in this policy of more than one INSURED shall not operate to increase the COMPANY'S total liability for all INSURED'S covered by this policy beyond the limits set forth in Item 3 I, 3 I B and 3 II of the Declarations.

**D. Notice of Occurrence, Claim or Legal Proceeding:** Upon the happening of an OCCURRENCE reasonably likely to involve the COMPANY hereunder, written notice shall be given as soon as practicable to the COMPANY or any of its authorized agents. Such notice shall contain particulars sufficient to identify the INSURED and the fullest information obtainable at the time.

The INSURED shall give like notice of any claim made or legal proceeding commenced on account of such occurrence. If legal proceedings are begun, the INSURED, when requested by the COMPANY, shall forward to it each paper thereon, or a copy thereof, received by the INSURED or the INSURED'S representatives, together with copies of reports of investigations made by the INSURED with respect to such claim proceedings.

**E. Action Against COMPANY:** No action shall lie against the COMPANY unless, as a condition precedent thereto, the INSURED shall have fully complied will all the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the COMPANY.

**F. Appeals:** In the event the INSURED or the INSURED'S underlying insurer elects not to appeal a judgment in excess of the RETAINED LIMIT, the COMPANY may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the COMPANY for ULTIMATE NET LOSS exceed the amount set forth in Insuring Agreement II (UNDERLYING LIMIT—RETAINED LIMIT) and Insurance Agreement III (LIMITS OF LIABILITY) any one OCCURRENCE plus the taxable costs, disbursements and interests incidental to such appeal.

**G. Payment of ULTIMATE NET LOSS:** Coverage under this policy shall not apply unless and until the INSURED, or the INSURED'S underlying insurer, shall be obligated to pay the amount of the UNDERLYING LIMIT or RETAINED LIMIT on account of PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE. When the amount of ULTIMATE NET LOSS has finally been determined, the COMPANY shall promptly indemnify the INSURED the amount of ULTIMATE NET LOSS falling within the terms of this policy.

**H. Other Insurance:** If other collectible insurance with any other INSURER is available to the INSURED covering a loss covered hereunder, except insurance purchased to apply in excess of the sum of the RETAINED LIMIT and LIMIT OF LIABILITY hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance. If collectible insurance under any other policy(ies) of the COMPANY is available to the INSURED, covering a loss also covered hereunder (other than underlying insurance of which the insurance afforded by this policy is in excess), the COMPANY'S total liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such policy(ies). If other collectible insurance under any policy(ies) of the COMPANY is available to the INSURED, the ULTIMATE NET LOSS as the result of any one OCCURRENCE not covered by underlying insurance shall not be cumulative.

**I. Underlying Insurance:** If underlying insurance applicable in any one OCCURRENCE is exhausted by payment of judgment or settlement on behalf of the INSURED, the COMPANY shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the INSURED resulting from the same occurrence, but only where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another insurer.

**J. Bankruptcy and Insolvency:** In the event of the bankruptcy or insolvency of the INSURED or any entity comprising the INSURED, the COMPANY shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

**K. Subrogation:** In the event of any payment under this policy, the COMPANY shall be subrogated to all the INSURED'S rights of recovery against any person or organization and the INSURED shall execute and

deliver instruments and papers and do whatever else is necessary to secure such rights.

The amount recovered as subrogation shall be apportioned in the inverse order of payment of ULTIMATE NET LOSS to the extent of the actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries.

**L. Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the COMPANY from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the COMPANY.

**M. Assignment:** Assignment of interest under this policy shall not bind the COMPANY until its consent is endorsed hereon; if, however, the NAMED INSURED shall be adjudged bankrupt or insolvent, this policy shall cover the NAMED INSURED'S legal representative as NAMED INSURED; provided that notice of cancellation addressed to the INSURED named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**N. Cancellation:** This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the NAMED INSURED or by the COMPANY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED.

If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

**O. Maintenance of Underlying Insurance:** It is warranted by the Insured that the underlying policy(ies) listed in Schedule A, or renewals or replacements thereof not more restrictive in coverage, shall be maintained in force during the currency of this policy, except for any reduction in the aggregate limit(s) contained therein solely by payment of claims in respect of OCCURRENCES happening during the period of this policy. In the event of failure by the INSURED so to maintain such policy(ies) in force, the insurance afforded by this policy shall apply in the same manner it would have applied had such policy(ies) been so maintained in force.

**P. Employers' Liability—Common Law Defenses:** As a condition to the recovery of any loss under this policy, with respect to personal injury to or the death of any employee arising out of and in the course of employment by the NAMED INSURED, the NAMED INSURED warrants that it has not and will not abrogate its common law defenses under any worker's compensation or occupational disease law by rejection thereof, or otherwise. In the event the NAMED INSURED shall, at any time during the policy period, abrogate such defenses, such insurance as is afforded with respect to such employee shall automatically terminate at the same time.

**Q. Service of Suit Clause:** It is agreed that in the event of the failure of the COMPANY to pay any amount claimed to be due hereunder, this COMPANY, at the request of the INSURED, will submit to the jurisdiction of any Court of Competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the highest one in authority bearing the title "Commissioner", "Director", or "Superintendent" of Insurance of the State or Commonwealth wherein the PROPERTY covered by this policy is located, and that in any suit instituted against it upon this contract this COMPANY will abide by the final decision of such Court or any Appellate Court in the event of an appeal. The one in authority bearing the title "Commissioner", "Director", or "Superintendent" of Insurance of the State or Commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on behalf of this COMPANY in any such suit and/or upon the INSURED'S request to give a written undertaking to the INSURED that they will enter a general appearance upon this COMPANY'S behalf in the event such a suit shall be instituted.

**R. Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

**IN WITNESS WHEREOF,** the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

The imaging service LLC does not certify that these documents constitute a complete and accurate copy of the policy

_Michael J. Wills_
Secretary

President

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

## SACV10- 1032 AG (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] Southern Division<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] Eastern Division<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
| --- | --- | --- |

Failure to file at the proper location will result in your documents being returned to you.

Steven H. Schwartz, Esq.
sschwartz@sj-law.com
SCHWARTZ & JANZEN, LLP
12100 Wilshire Boulevard - Suite 1125
Los Angeles, CA 90025-7117

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRST STATE INSURANCE COMPANY,<br><br>PLAINTIFF(S)<br>v.<br><br>HILL BROTHERS CHEMICAL COMPANY,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**SACV10-01032 AG(RNBX)**<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): HILL BROTHERS CHEMICAL COMPANY,

A lawsuit has been filed against you.

Within ___2٦___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Steven H. Schwartz_, whose address is _12100 Wilshire Boulevard, Suite 1125, Los Angeles, CA 90025-7117_. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __JUL -7 2010__

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                     **SUMMONS**

Steven H. Schwartz, Esq.
sschwartz@sj-law.com
SCHWARTZ & JANZEN, LLP
12100 Wilshire Boulevard - Suite 1125
Los Angeles, CA 90025-7117

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| FIRST STATE INSURANCE COMPANY, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **SACV10-01032 AG(RNBX)** |
| v. | |
| HILL BROTHERS CHEMICAL COMPANY, | |
| | **SUMMONS** |
| DEFENDANT(S). | |

TO:   DEFENDANT(S): HILL BROTHERS CHEMICAL COMPANY,

      A lawsuit has been filed against you.

      Within ___2-1___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Steven H. Schwartz , whose address is  12100 Wilshire Boulevard, Suite 1125, Los Angeles, CA 90025-7117 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  JUL - 7 2010

By: _____
      Deputy Clerk

      NANCY CASTRO

(Seal of the Court)          1144

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| FIRST STATE INSURANCE COMPANY | HILL BROTHERS CHEMICAL COMPANY |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Steven H. Schwartz, Esq.  (310) 979-4090 SCHWARTZ & JANZEN, LLP 12100 Wilshire Boulevard, Suite 1125, Los Angeles, CA 90025-7117 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes  ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)
DECLARATORY RELIEF AND REPAYMENT

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: _____ **SACV10-01032 AG(RNBX)** _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
   ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
   ☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Cook County | ILLINOIS |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
   ☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | CALIFORNIA |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | CALIFORNIA |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date  7-7-2010

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |